Curran, Dennis J., J.
This sexual harassment action, brought under G.L.c. 15IB, §4(1), is based on a hostile work environment allegedly created by the Massachusetts Department of State Police during Derek Langton’s service as a state trooper. Upon learning of his homosexuality, several of Trooper Langtoh’s co-workers allegedly created a hostile work environment by engaging in serious and persistent harassment against him based on his sexual orientation.
These actions included, but were not limited to, the following. On February 11, 2009, several “blow pop” lollipops were placed in Trooper Langton’s cruiser. In March 2009, he received unsolicited messages offering retirement accommodations in the same town as the one in which the state police barracks was located. In May 2009, Trooper Langton’s co-workers inquired if he had stocked “whistle condoms” as part of his duties as the supply officer; and a “whistle condom” was placed in the supply locker shortly thereafter. Several of Trooper Langton’s co-workers frequently made sexually suggestive gestures or remarks when speaking with him about his sexuality, which they did not make to other Troopers.
In addition, Trooper Langton’s cruiser was vandalized several times during the course of that same year. The acts of vandalism occurred both at work and at his home. They included flattening his tires, pushing the side mirrors in, draining the battery, and wrapping a USB cable around the antenna. Trooper Langton reported these and other acts of harassment to his supervisors, who largely did not act to stop the problem.
On June 1, 2009, Trooper Langton took an extended leave as a result of a back injury sustained on the job. He believed his absence would lead to an improvement in his working conditions. In April 2010, while on leave of absence, the tires on his car were again flattened several times, the side mirrors were again pushed in, and the body of the car was scratched. Trooper Langton received e-mails at his personal e-mail address related to his car tires and retirement accommodations—again, in the same town as the state police barracks—as the previous message on that subject. These messages continued until May 11, 2010.
Trooper Langton filed a charge of discrimination with the Massachusetts Commission against Discrimination on July 6, 2010. The charge was dismissed as untimely on December 18, 2012. This action followed.
The sole issue before the Court is whether the continuing violation doctrine applies to Trooper Langton’s hostile work environment claim. The continuing violation doctrine applies where a plaintiff is able to “. . . show, within the six-month limitation period, the existence of at least one incident of sexual conduct which, standing alone might not necessarily support [his] claim, but which substantially relates to earlier incidents of abuse, and substantially contributes to the continuation of a hostile work environment, such that the incident anchors all related incidents, thereby making the entirety of the claim for discriminatory conduct timely.” Cuddyer v. The Stop & Shop Super-mkt. Co., 434 Mass. 521, 533-34 (2001). Trooper Langton must also show that he was not “aware that [he] was being unlawfully discriminated against while the earlier acts, now untimely, were taking place.” Id. at 535.
As to the required first showing, Trooper Langton has plainly demonstrated that he was subject to acts of harassment within the 300-day limitations period before July 6, 2010. His car was vandalized several times at his home, in a fashion quite similar to the manner in which his cruiser had been vandalized at work. He received an e-mail that was curiously similar to a previous e-mail sent to him as part of a pattern of harassing conduct that took place on the job. That e-mail, too, was based on his sexual orientation. Notwithstanding the State Police’s suggestion to the contrary, these actions can be considered actionable sexual harassment. See Salvi v. Suffolk Cnty. Sheriffs Dept., 67 Mass.App.Ct. 596, 605 (2006) (act of harassment occurring at plaintiffs home considered “probative evidence of a hostile work environment”); Massachusetts Commission Against Discrimination, Sexual Harassment in the Workplace Guidelines, 4 (2007), available at *382 http://www.mass.gov/mcad/shtoc.html (last visited Sept. 25, 2013) (“Chapter 151B may apply to harassment that occurs between co-workers that takes place outside the workplace”).
As to the required second showing, there is a substantial relationship between the harassing conduct that occurred within the limitations period and the harassing conduct that occurred beforehand. The means by which Trooper Langton’s vehicle was vandalized at his home was, in some instances, virtually identical to the means by which his cruiser was vandalized while parked at work. In addition, he received harassing e-mails of a nature inside the limitations period sharply coincident to those he received outside the limitations period. Especially when considered in light of this Court’s duly to view the record in the light most favorable to Trooper Langton and resolve all reasonable inferences in his favor, Fraelik v. Perkettpr, Inc., 83 Mass.App.Ct. 698, 699 (2013), this harassing behavior inside the limitations period has a sufficient relationship to the harassing behavior outside the limitations period to justify application of the continuing violation doctrine.
As to the required third showing, the State Police argues that the frequency of the allegedly harassing conduct in 2009, along with Trooper Langton’s report to his supervisors, means that he knew or should have known that he was the victim of unlawful discrimination in 2009. While this argument is not without force, “whether the discriminatory acts prior to the . . . limitation period are time-barred ... is a factual issue that should be determined by a jury.” Clifton v. Mass. Bay Transp. Auth., 62 Mass.App.Ct. 164, 172 (2004), rev’d on other grounds, 445 Mass. 611 (2005). This outcome conforms to the general rule that issues related to a parly’s knowledge, intent, or state of mind are customarily reserved for determination by the jury at trial, and not by the Court on a dispositive motion, particularly a motion to dismiss. See White v. Town of Seekonk, 23 Mass.App.Ct. 139, 141 (1986); see, e.g., Cuddyer, 434 Mass, at 541. These issues were well best left to the province of a jury.
ORDER
For these reasons, the State Police’s motion to dismiss is, in all respects, DENIED.